[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Following a complete review of the Court file and a hearing held on January 15, 1998 where both parties attended and testified, the Court makes the following findings and enters the following orders in connection with Motion #173 to Reopen and Modify Judgment, dated July 7, 1997 and filed July 8, 1997, and Motion #180 for Counseling for Minor Child — Post Judgment, dated and filed January 13, 1998.
The Court finds no evidence to support an order for counseling for Catherine Wallace and believes it would be inappropriate at this time to order such counseling. Therefore, said motion is denied.
As concerns Motion #173, the Court finds that the parties have agreed to the following and therefore grants said motion and enters the following orders which are consistent with said agreement:
1. The parties shall share joint legal custody of the two minor children, John Wallace, Jr. (age 17) and Catherine Wallace (age 13).
2. Catherine Wallace's primary residence shall be with her father.
3. John Wallace, Jr.'s primary residence shall be with his mother.
4. The father shall have reasonable visitation with John Wallace, Jr., which shall be worked out between John Wallace, Jr. and his father.
5. The mother shall have visitation with Catherine Wallace pursuant to an agreement of the parties dated August 18, 1997 (see pleading #175 in court file). CT Page 406
6. The mother shall be entitled to take John Wallace, Jr. as a tax exemption for the year 1996 and thereafter pursuant to Judge Solomon's order of November 20, 1996 (see pleading #162 in court file).
7. The father shall be permitted to take Catherine Wallace as a tax exemption for 1996 and thereafter pursuant to Judge Solomon's order of November 20, 1996 (see pleading #162 in court file).
8. The parties have agreed that child support shall be payable as follows: the Defendant father shall pay the Plaintiff mother $105.00 per week until John Wallace, Jr. turns 18 on September 3, 1998 at which time the Plaintiff mother shall then pay the Defendant father $95.00 per week until Catherine Wallace turns 18 as provided in the Connecticut General Statutes. This agreement as to child support is consistent with the Connecticut Child Support Guidelines using the financial affidavits filed with the court on October 15, 1997. For the purposes of this order, the Court is setting the net income of the mother at $467.00 per week and the net income of the father at $1,055.00 per week.
9. The orders pursuant to Motion #179 for Defendant to Cease All Communication with Plaintiff at Her Place of Employment continue in force.
Further as to Motion #173, the Court has reviewed and considered paragraph 9 of the Memorandum of Decision by Judge Schimelman dated September 7, 1988, the Motion for Contempt dated March 17, 1994 (see pleading #133 in court file), the Stipulation of the Parties resolving that motion (see pleading #136 in court file) which became an order of this court on April 4, 1994, and the testimony and documents offered at the hearing on January 15, 1998 in reaching this decision.
The following orders are hereby entered in connection with the Trust Agreement of the parties dated May 18, 1990 (copy attached hereto):
1. The Plaintiff mother's reimbursement of $6,000.00 to the trust shall be without interest. CT Page 407
2. The Defendant father shall refinance the car loan and return the balance of the money borrowed from the trust within sixty (60) days of this decision without interest.
3. The parties will either agree to the appointment of a new trustee to replace them as trustees under said Trust Agreement or the Court shall remove them as trustees and appoint a new trustee under said Trust Agreement within thirty (30) days of this decision. If the parties cannot agree on a new trustee, they may submit names to the Court for its consideration.
4. Each party shall provide an accounting of the trust funds to the new trustee and immediately turn over to the new trustee the trust funds in their possession or under their control. It is the understanding of this Court that the Plaintiff mother holds approximately $11,342.00 of trust funds and the Defendant father holds approximately $30,000.00 of trust funds.
5. The Court hereby schedules a hearing on March 6, 1998 at 2:00 p. m. to confirm the appointment of a new trustee.
James G. Kenefick, Jr., J.
TRUST AGREEMENT
 AGREEMENT made this 18th day of May, 1990, byLINDA D. WALLACE, of the Town of Norwich, County of New London and State of Connecticut and JOHN H. WALLACE, JR, of the Town of Groton, County of New London and State of Connecticut, hereinafter called the "Trustees".
WITNESSETH
1. The Trustees shall hold in trust the Kemper U.S., Government Securities Fund shares, AMEV Investors, Inc., shares and Norwich Savings Society stock for the benefit of their children, Amanda H. Wallace, John H. G. Wallace, Jr., and Catherine L. Wallace, subject to the following terms and conditions.
2. Purposes: The Trustees shall invest, convert to cash, and/or hold the above described stocks and shares and any CT Page 408 unapplied income from time to time and apply so much of the principal and income therefrom as shall in the absolute discretion of the Trustees be requisite or proper to provide for the education of said Amanda H. Wallace, John H. G. Wallace, Jr., and Catherine L. Wallace, hereinafter referred to as the primary beneficiaries, until the youngest child reaches the age of twenty-five (25) years of age. In exercising their discretion, the Trustees are to take into account all other sources of income and all other assets of the beneficiaries. The purpose of this Trust is to provide the available stock, shares, cash and/or income of the Trust to the primary beneficiaries who may be in need of such assistance foreducational purposes. In connection with making such payments to the primary beneficiary, the Trustees shall be conservative in exercising their discretion and shall expend said stock, shares, cash and/or income and principal only to the extent necessary to supplement other funds available to such child in order to provide for such children, a proper education and the Trustees are hereby exonerated from any liability in connection with making such payable in the exercise of their absolute discretion.
3. Dispositive Provisions:
(a) The Trustees shall hold in trust said stock, shares, cash and/or income in trust for the educational benefit of said Amanda H. Wallace, John H. G. Wallace, Jr. and Catherine L. Wallace, as hereinbefore enumerated.
(b) In the event that there remains any stock, shares, cash and or income from said trust at the time the youngest child reaches the age of twenty-five (25) years, then in such event the trust shall terminate and the trust shall be equally divided between the Trustees, Linda D. Wallace and John H. Wallace, Jr., per stirpes and not per capita.
4. Trustees' Powers: In the administration of the Trust, the Trustees shall have the following powers and discretion, in addition to those now or hereafter conferred upon the Trustees generally, all of which, subject to any limitation stated elsewhere in this agreement, shall be exercised in a fiduciary capacity, principally in the interests of the primary beneficiaries:
(a) To invest and reinvest the trust funds in property of any kind, real, personal, or mixed, or in choses in action, or in CT Page 409 any business, irrespective of any statute, case, rule, or custom limiting the investment of the trust funds.
(b) To engage in those activities and to invest in those assets, even though they may be of a speculative nature, which promise to yield the greatest return and result in a maximum appreciation of corpus; and they are hereby relieved from all liability for any loss of the trust funds resulting from the investment and reinvestment of the trust funds in any speculative business or venture.
(c) To sell, at public or private sale, mortgage, lease (even though the term of the lease may extend beyond the term of the Trust), and otherwise manage real estate and rights below and above its surface.
(d) To make allotments or distributions in kind.
(e) To compromise and arbitrate claims.
(f) To exercise all rights as the owner of corporate securities, including among others, the right to vote by proxy, participate in reorganizations and voting trusts, and hold stock in their own name, or in the name of a nominee, with or without disclosing the fiduciary relationship.
(g) To borrow money and mortgage, grant a security interest in, or pledge the property of the trusts as security therefor.
(h) To advance money for the protection of the trusts or their property and secure such advances by a lien on the property of the trusts.
(i) To execute and deliver any written instruments which they may deem advisable to carry out any power or discretion granted to them; and all persons shall be fully protected in relying upon their power to execute every such instrument, and no one shall be obliged to see to the application by them of any money or property received by them pursuant to the execution and delivery of any such instrument.
5. Limitation on Powers: No powers of the Trustees enumerated herein or now or hereinafter conferred upon the Trustees or either of them, or any other person to purchase, exchange or otherwise deal with or dispose of all or any part of CT Page 410 the corpus or income of the trust for less than an adequate consideration in money or money's worth, or to enable the Trustees to borrow all or part of the corpus or income of the trusts, directly or indirectly, without adequate interest or security. No person, other than the Trustees, shall have or exercise the power to vote or direct the voting of any stock or other securities of the trusts, to control the investment of the trusts either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, or to reacquire or exchange any property of the trusts by substituting other property of an equivalent value.
6. Additional Property: The Trustees and any other persons shall have the right at any time to make additions to the corpus of the trust. All such additions shall be held, controlled, and distributed by the Trustees in accordance with the terms and conditions of this Agreement.
7. Spendthrift Provision: The interests of the primary beneficiaries, in the corpus or income of the Trust shall not be subject to assignment, alienation, pledge, attachment or claims of creditors, and shall not otherwise be voluntarily or involuntarily alienated or encumbered by such beneficiary.
8. Bond: No trustee shall be required to give bond or other security.
IN WITNESS WHEREOF, the Trustees have signed and sealed this agreement and, to evidence their acceptance of the terms and conditions of the trust, the Trustees have signed and sealed this agreement.
__________________________ _________________________ Donald J. DiFrancesca Linda D. Wallace
__________________________ _________________________ Beverly Hinckley John H. Wallace, Jr.
STATE OF CONNECTICUT)) ss. Norwich May 18, 1990 COUNTY OF NEW LONDON)
Personally appeared LINDA D. WALLACE and JOHN H. WALLACE, JR., signers and sealers of the foregoing instrument and acknowledged same to be their free act and deed, before me. CT Page 411
________________________ Notary Public Donald J. DiFrancesca